JjKOSTELKA, J.
David McKinney (“McKinney”) pled guilty to DWI, third offense, La. R.S. 14:98, reserving his right to appeal the denial of a motion to quash the bill of information attacking the constitutionality of predicate pleas.[1] Finding no error in the trial court denial of the motion to quash, we affirm.
Facts
Previous to the present offense of conviction, McKinney had two DWI convictions which formed the basis of the state’s third offender bill. Those convictions also arose out of the Fifth Judicial District, Franklin Parish, on February 11, 1997 (No. 97-68 M), and February 20,1991 (No. 27,251).
McKinney initially entered a not guilty plea to the present offense and subsequently filed a motion to quash the bill of information challenging the validity of the two prior guilty pleas and the state’s use of them for enhanced prosecution. In the motion to quash, McKinney specifically argued that the previous pleas were constitutionally infirm due to ineffective representation by appointed counsel or inadequate waiver of his right to counsel. After a hearing, the trial court denied McKinney’s motion.[2]
Thereafter, McKinney entered a plea of guilty to DWI, third offense, reserving his right to appeal the denial of his motion to quash. The trial court sentenced him to five years at hard labor with four years of the sentence suspended. McKinney was placed on supervised probation for five years, commencing after his release from incarceration, and ordered to pay a $2,000.00 fine and court costs. This appeal ensued.
| {.Discussion
On appeal, McKinney first contends that the prior DWI offenses cannot be used for enhancement purposes, because at both proceedings, appointed counsels’ performance was ineffective. He also contends that the inadequate performance of counsel and the procedure utilized for the appointment of counsel effectively caused McKinney’s pleas to have been uncoun-seled and invalid for use as predicate offenses due to the lack of a knowing and intelligent waiver of counsel.
An indigent defendant in Louisiana has the constitutional right to appointed counsel in any misdemeanor case punishable by a term of imprisonment. La. Const. Art. I, § 13; State v. Stevison, 97-3122 (La.10/30/98), 721 So.2d 843. The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. State v. Wry, 591 So.2d 774 (La.App. 2d Cir.1991). The constitutional standard for effectiveness of counsel is the same in guilty plea cases as in cases which have gone to trial. Id.
The guidelines for evaluating claims of ineffective assistance of counsel *368 were set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The defendant must show that his counsel’s performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. Wry, supra.
Before a court may accept an un-counseled plea to a misdemeanor offense, it must expressly advise the accused of his right to counsel and to appointed counsel if he is indigent, and determine on the record, whether the waiver is made knowingly and intelligently under the circumstances. Stevison, supra.

Testimony at Motion to Quash

The testimony of James M. Miller, court-appointed counsel for McKinney’s 1997 plea, shows that in the case of both guilty pleas, it was court [¡¡custom to appoint an attorney to represent misdemean- or defendants who were scheduled for court appearances. Although he understood that other counsel would be appointed in case of trial, Miller testified that he appeared as counsel or as an indigent defender for McKinney on the day of his guilty plea.[3] For misdemeanor cases, one attorney was appointed to represent each defendant who was scheduled to appear before the court on a given day. The appointed attorney would call each of the defendants into a back room where he would converse with the group en masse. Generally, the attorney would inform the defendants of the potential penalties each faced for the charged offense or an enhanced penalty for a future violation. The defendants were also explained their Boy-kin[4] rights. Thereafter, the attorney would address each defendant individually to determine whether or not they desired to plead guilty. If the offender sought to plead guilty to second or third offense DWI, the attorney evaluated the validity of the prior pleas. When the defendant claimed to have a defense that appeared valid, the attorney sought to obtain the district attorney’s file for further investigation. In the case of an incompetent defendant, the attorney would postpone arraignment for that day. Miller indicated that if any issues came up during the en masse conference, it was his policy to follow up on the information given. After the conference, the attorney accompanied the defendants back into court for the taking of guilty pleas. The court would then re-advise the defendants of their Boy-kin rights prior to taking guilty pleas. Miller had no independent recollection of McKinney’s February 11, 1997 guilty plea.
The record shows that at McKinney’s 1991 guilty plea, seven other defendants pled guilty; nine other defendants pled guilty at McKinney’s 1997 plea.
| ¿Procedure
We cannot conclude, as McKinney argues, that the procedure utilized for appointment of counsel in both of his guilty pleas effectively rendered the pleas un-counseled. Clearly, the appointment process was for the purpose of affording McKinney representation in accord with Constitutional mandate. Although we may agree that the method of appointment, i.e., one counsel for numerous defendants, may not qualify as the perfect appointment procedure, we cannot find the process inherently flawed. The obligation of the court to see that indigent misdemeanor defendants who desire counsel are represented is fulfilled even by this procedure. As we will discuss hereinafter, we find that the appropriate focus for inquiry to be the actions of counsel after appointment rather *369 than the procedure utilized for appointment.

Necessity of Waiver of Counsel

We also reject McKinney’s argument that because counsels’ deficient performance ostensibly caused him to enter into an uncounseled guilty plea, the predicate pleas should be invalidated due to a lack of a valid waiver of counsel. Even though the attorneys knew that their representation of the client would be limited, and that separate counsel would be appointed for trial, it is clear that the lawyers were also aware that part of their job as indigent defenders extended to the representation of these misdemeanor defendants. In keeping with that understanding, counsel performed acts of representation including information of Boykin rights, investigation of predicate offenses and the individual determination of whether defendants desired to plead guilty. Counsel also accompanied the defendants to court for the taking of the guilty pleas.
While we do not laud the apparent complacency which accompanies the client interview process in this case, we are not prepared to classify the totality of J¿counsels’ actions as a constructive denial of counsel[5] or a mere formality of appointment. Counsel clearly understood his appointment as an obligation to represent McKinney. He performed acts in furtherance of that duty including the information of rights and accompaniment to court with the defendant for the guilty plea. Considering the uncomplicated and self-explanatory nature of the crime of DWI,[6] we find these acts, albeit minimal, sufficient to qualify as representation for the purposes of McKinney’s guilty pleas. Accordingly, we reject McKinney’s classification of his pleas as uncounseled. And, with legal representation, it was unnecessary for McKinney to waive counsel.

Ineffective Assistance of Counsel

Because we find that McKinney was represented at the time of his guilty pleas, the relevant inquiry becomes the effectiveness of counsels’ performance under Strickland, supra. When a defendant enters a counseled plea of guilty, this court will review the quality of counsel’s representation in deciding whether the plea should be set aside. State v. Beatty, 891 So.2d 828 (La.1980).
Even so, however, McKinney’s claim fails under the second prong of the Strickland, supra, inquiry which requires a demonstration of prejudice. McKinney has nowhere alleged or shown any facts which demonstrate with reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different, i.e., any defense or fact which was not raised or discovered by counsel and which would have otherwise caused McKinney to plead not guilty and decide to go to trial. In this case, McKinney can | fionly make out a claim of ineffective assistance by pointing to specific errors made by counsel. U.S. v. Cronic, 466 U.S. 648, 104 S.Ct. 2089, 80 L.Ed.2d 667 (1984). He has failed to do so. Without a showing of prejudice, McKinney cannot demonstrate that his representation at either plea was constitutionally • ineffective.

Error Patent

We note that the trial court failed to adequately advise McKinney of the prescriptive period for filing post-conviction relief as required by La. C.Cr.P. art. 930.8. Although this apparent oversight is *370 not grounds for reversal under La.C.Cr.P. art. 921, the required notice is designed to apprise the defendant in advance about the statutory limitation. Accordingly, the district court is hereby directed to send appropriate notice in accordance with the newly amended provisions of La.C.Cr.P. art. 930.8 (Acts 1999, Regular Sess., No. 1262) within thirty days of the rendition of this opinion, and then file, in the record, proof that McKinney received such notice. State v. Morvan, 31,511 (La.App.2d Cir.12/09/98), 725 So.2d 515, writ denied, 99-0186 (La.05/28/99), 743 So.2d 659.
Conclusion
Considering the foregoing, we find no error in the trial court’s denial of McKinney’s motion to quash the 1991 and 1997 predicate DWI offenses. We, accordingly, affirm his conviction for DWI, third offense. The trial court is directed to send appropriate notice to McKinney of post-conviction relief time delays within thirty days of the rendition of this opinion, and then file, in the record, proof that McKinney received such notice.
AFFIRMED.
NORRIS, C.J., dissents with written reasons.

. McKinney reserved his right to appeal the denial of his motion to quash pursuant to State v. Crosby, 338 So.2d 584 (La.1976).

. This court denied McKinney's writ application which sought review of the denial of the motion to quash in No. 32,143 (La.App.2d Cir.12/10/98). The Louisiana Supreme Court denied an application for supervisory writs as well in No. 99-0105 (La.03/12/99).

. The parlies stipulated that the same procedure described by Miller would be appropriate to describe that utilized by the court and McKinney's attorney in the 1991 plea. Accordingly, the discussions herein apply to both proceedings.

. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

. We distinguish this case from our unpublished State v. Green, (La.App.2d Cir.09/22/99), wherein we found a constructive denial of counsel. Not only did Green involve a resentencing proceeding, but counsel there clearly stated on the record that he did not know why he was there and did nothing to represent the defendant. Unlike the present case, there was no evidence in Green that counsel was even aware of the type of proceedings or had at any time met with the defendant regarding the resentencing. There, counsel could be viewed as nothing more than a mere spectator.

. See generally, State v. Strain, 585 So.2d 540 (La.1991).